IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MARQUIS WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:20-cv-00533 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| HAROLD W. CLARKE, *et al.*, | ) | By:  Hon. Thomas T. Cullen |
| | ) |      United States District Judge |
| Defendants. | ) | |

Marquis Wilson ("Wilson" or "Plaintiff"), a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983 against 12 named defendants: Harold W. Clarke, Director of the Virginia Department of Corrections ("VDOC"); Dr. Mark Amonette, M.D., VDOC Chief Physician; Barry Marano, VDOC Statewide Americans with Disabilities Act ("ADA") Coordinator; Mr. Woodson, Lead Warden, Buckingham Correctional Center ("BKCC"); Mr. J. Snoddy, Assistant Warden, BKCC; Mr. G. Sink, ADA Coordinator & Unit Manager for C/D Building; Major R. Goldman, Chief of Security; Ms. R. Trent, Chief of Housing and Programs; Ms. C. Bryant, Institutional OPR Manager; Dr. Ohai, Institutional Chief Physician; Dr. Quinn, Psychologist; J. Lynchard, Unit Manager for A/B Building; and Mr. & Mrs. John Doe (collectively "Defendants").[1]

Wilson alleges various instances of inadequate medical care and/or failure to accommodate his disabilities, as well as acts of retaliation. This matter is before the court on

---

[1] Wilson misspelled several defendants' names. They are: "Marano," not "Martano;" "Snoddy," not "Snoody;" and "Ohai," not "Ohio." The clerk will update the docket to reflect the correct spelling of each defendant's name.

Defendants' motions to dismiss.[2] Wilson has responded, making the matter ripe for disposition. For the reasons discussed below, the court will grant Defendants' motions to dismiss.

## I.

Wilson alleges three separate claims in his amended complaint. The first claim is based on alleged failures to provide accommodations for his disabilities. Wilson alleges that he is vision and hearing impaired and suffers from schizophrenia, post-traumatic stress disorder, bipolar disorder, and memory loss caused by an attack and subsequent coma. Wilson alleges that he was placed in segregation on December 7, 2019, because there were no available accessible cells or beds (presumably, no handicap-accessible cells or bed). Dr. Quinn allegedly informed Wilson on December 26, 2019, that his file did not include diagnoses of the disabilities that Wilson claims. Wilson was thereafter placed in general population with a violent cellmate. He was also required to surrender his "disability ID" which had "indicated alert signs due to seizures." (Am. Compl. Claim #1 [ECF No. 11].)

Wilson alleges that he complained about this housing placement to Sink, the ADA Coordinator, on January 3, 2020. Sink allegedly informed Wilson that BKCC would not provide any special accommodation for Wilson's hearing and vision impairments. On January 9, 2020, Wilson made another complaint. This second complaint apparently led Marano, the Statewide ADA Coordinator, to arrange for Dr. Ohai to conduct a medical evaluation. Dr.

---

[2] Defendants Lynchard and Sink have jointly filed a motion to dismiss (ECF No. 31), and the remaining Defendants have jointly filed a separate motion to dismiss (ECF No. 20).

Ohai concluded that Wilson did not need any accommodations. Wilson then complained about Dr. Ohai's evaluation.

Wilson alleges he thereafter suffered two separate attacks by other inmates at BKCC: (1) an attack in A/B upper housing (where Lynchard was the Unit Manager); and (2) an attack in C/D upper housing (where Sink was the Unit Manager). Wilson spoke, or sought to speak, with Goldman, Woodson, Snoddy, Trent, and Bryant about these attacks. Wilson does not allege making any complaints about the attacks. Instead, Wilson claims in vague and conclusory fashion that he has since been "extorted, attacked, and victimized." (*Id.*)

Wilson's second claim is founded on an alleged failure to provide an electroencephalogram ("EEG") ordered by Dr. John Doe when Wilson was allegedly being treated for a coma. Wilson also—perhaps relatedly, but it is unclear—alleges a retaliatory transfer to BKCC. Wilson believes that his complaints of inadequate medical treatment provoked this allegedly retaliatory transfer.

Wilson's third claim relates to his prior lawsuit, *Wilson v. Virginia Department of Corrections*, No. 1:17-cv-1487 ("EDVA lawsuit"). The Eastern District of Virginia granted summary judgment as to all Wilson's claims in the EDVA lawsuit. *See id.*, 2019 WL 1186845 (E.D. Va. Mar. 13, 2019).[3] Wilson claims he has experienced retaliation because of pursuing that lawsuit, including being stripped of all accommodations and being beaten.

Defendants argue that Wilson's amended complaint lacks context and fails to describe any actual violation of any statutory or constitutional right. In response to Defendants'

---

[3] Wilson's remaining claims in the EDVA lawsuit that were not decided in the March 13, 2019 memorandum opinion were decided in a subsequent memorandum opinion issued November 7, 2019. *Wilson*, No. 1:17-cv-1487 (E.D. Va. Nov. 7, 2019) [ECF No. 46].

motions to dismiss, Wilson elaborates on some of his factual allegations. Wilson claims that Quinn and prison administrators at BKCC overrode security concerns to place him in general population with a violent cellmate, and that Wilson was attacked by officers and inmates. Wilson filed multiple complaints claiming that he was denied services offered to similarly situated inmates, but he does not describe those complaints, or the services that officials allegedly denied him. He claims more attacks by other inmates. Based on this factual predicate, Wilson argues that defendants have violated regulations promulgated under the ADA, 42 U.S.C. § 12101 *et seq.*, specifically 28 C.F.R. § 35.152(b) and 28 C.F.R. § 36.206. Wilson argues that a disability diagnosis, once made, may not be subsequently removed unless the condition has been cured by a medical doctor.

## II.

To allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "[l]iberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 127, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). "[I]t does not resolve

contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

### III.

Title II of the ADA "unambiguously" applies to state prisons. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210, 213 (1998). Applicable federal regulations promulgated under the ADA prohibit discrimination against state prisoners based on a prisoner's disabilities. 28 C.F.R.

§ 35.152(b). Among other forms of prohibited discrimination, prison officials must ensure that inmates with disabilities are not excluded from participation in, or denied the benefits of, services, programs, or activities because the prison facility is inaccessible to or unusable by the inmate. *Id.* § 35.152(b)(1). In order to establish a violation of the ADA, the prisoner must prove: (1) he has a disability; (2) he is otherwise qualified for the benefit, service, program, or activity in question; and (3) his exclusion was due to discrimination on the basis of the disability. *Doe v. University of Maryland Med. Sys. Corp.*, 50 F.3d 1261, 1264–65 (4th Cir. 1995); *Brown v. Department of Public Safety and Correctional Services*, 383 F. Supp. 3d 519, 556 (D. Md. 2019) (noting that "state prisons must provide inmates equal access to the benefits they confer").

Regarding inmate security classifications and housing, prison officials may not "place inmates or detainees with disabilities in inappropriate security classifications because no accessible cells or beds are available." 28 C.F.R. § 35.152(b)(2)(i); *see Armstrong v. Brown*, 103 F. Supp. 3d 1070, 1072 (N.D. Cal. 2015) (California prison officials violated ADA regulations by placing disabled state prisoners in administrative segregation due to a lack of accessible housing). ADA regulations also prohibit retaliation against prisoners for attempting to obtain disability accommodations or otherwise seeking to have the benefits, services, or advantages available under the ADA. 28 C.F.R. § 36.206.

The Fourth Circuit has recognized that the ADA does not create any cause of action against persons in their individual capacities. *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 471 (4th Cir. 1999). Rather, the "public entity" is the liable party. 42 U.S.C. § 12132. However, "the doctrine of *respondeat superior* applies in the ADA context, so the actions of the individual

defendants can serve as the basis for finding VDOC . . . in violation of the statute." *Bane v. Virginia Dep't of Corr.*, No. 7:12-CV-159, 2012 WL 6738274, at *10 (W.D. Va. Dec. 28, 2012). The plaintiff must nevertheless bring its claim against the public entity in question, as a party to the lawsuit. *See Baird*, 192 F.3d at 472 (dismissing ADA claims against individual defendants).

**IV**.

Wilson's first claim alleges various actions that he believes constitute failures to provide accommodations for his alleged disabilities, in violation of applicable ADA regulations. He also alleges that his brief placement in segregated housing in December 2019 was a violation of 28 C.F.R. § 35.152(b)(2)(i).

Wilson's first claim, however, fails because he has brought suit against numerous individual defendants, but not against the VDOC itself. ADA claims are only actionable against institutions, and not against individual defendants. For this reason, the court will grant the Defendants' motions to dismiss Wilson's ADA claims.

The court need not reach any substantive basis for dismissal of Wilson's ADA claims.[4] Because the court has made no substantive findings regarding the alleged ADA violations, this dismissal of Wilson's ADA claims against the individuals he has named as defendants will have no preclusive effect regarding any subsequent lawsuit alleging ADA claims against an appropriate institutional defendant. *See Lucky Brand Dungarees, Inc. v. Marcel Fashions Group, Inc.*, 140 S. Ct. 1589 (2020) (discussing the doctrines governing the preclusive effect of prior

---

[4] Aside from Wilson's failure to bring suit against a proper defendant, his factual allegations and legal claims are may state a plausible cause of action under the ADA, given his status as a *pro se* litigant. Wilson alleges he has specific disabilities, that he has unsuccessfully attempted to obtain disability accommodations and services, and that he has experienced retaliation.

litigation, known as claim preclusion (res judicata) and issue preclusion (collateral estoppel)). Wilson's ADA claims will be dismissed without prejudice. He may bring his ADA claims against a proper defendant in a separate lawsuit, subject to the applicable statute of limitations.

## V.

Regarding Wilson's second claim, the court "may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Witthohn v. Federal Ins. Co.*, 164 Fed. App'x 395, 396 (4th Cir. 2006) (unpublished); *see also Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995) (permitting district court to take judicial notice of public documents, such as court records, even when the documents were neither referenced by nor integral to plaintiff's complaint). The court takes judicial notice that Wilson's second claim in this lawsuit is duplicative of some of the claims he has alleged, against the same defendants, in his currently pending lawsuit at *Wilson v. Clarke, et al.*, No. 7:20-cv-452 (W.D. Va.) (the "-452 lawsuit"). Wilson complains of the same failure to provide an (EEG) allegedly ordered by Dr. John Doe. Wilson now also alleges the same vaguely pled retaliation that he alleges in the -452 lawsuit.

"A plaintiff has no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Cherelli v. InStore Group, LLC*, 513 F. Supp. 3d 187, 192, 2021 WL 91272, at *3 (D. Mass. Jan. 11, 2021). "As a general matter, the second suit duplicates the first where it (1) arises out of the same operative facts and (2) the interests of judicial economy and avoiding vexatious litigation outweigh the

plaintiff's interest in bringing the second suit." *Jenkins v. Gaylord Entertainment Co.*, 840 F. Supp. 2d 873, 883 (D. Md. 2012) (citation omitted). Such is the case here.

The court will not entertain Wilson's claims in this lawsuit that are duplicative of his claims in the earlier filed -452 lawsuit. Defendants' motion to dismiss will be granted as to Claim 2.

## VI.

Wilson's third claim alleges, in exceedingly vague terms, that he lost the EDVA lawsuit due to unfair tactics and treatment and that, since then, he has been stripped of all accommodations and beaten. But Wilson's claim of retaliatory treatment following on the EDVA lawsuit are duplicative of claims he has alleged in the -452 lawsuit and will be dismissed for this reason.

## VII.

In conclusion, the court will grant Defendants' motions to dismiss Wilson's claims against them without prejudice.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 12th day of October, 2021.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE